UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

CLEVELAND ROGERS,

        Plaintiff,                             Case No. 1:11-cv-1121

v.                                                  Honorable Robert J. Jonker

PATRICIA L. CARUSO et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff has paid the full filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). After review of the complaint, the Court will dismiss Plaintiff's claims in Counts I and III of the complaint, as well as Defendants Caruso, Heyns, Berghuis, and Birkett. The Court will allow service of the claims in Counts II, IV, and V of the complaint solely against Defendants Masselink, Wysozan, Kelly, and Hunt.

**Discussion**

    I.      Factual allegations

Plaintiff Cleveland Rogers is a state prisoner in the custody of the Michigan Department of Corrections (MDOC). Plaintiff is presently incarcerated at the Central Michigan

Correctional Facility (STF), though the events giving rise to his complaint occurred while he was incarcerated at the West Shoreline Correctional Facility (MTF) in Muskegon, Michigan. Defendants are employees of the MDOC: Daniel H. Heyns, the Director of the MDOC; Patricia L. Caruso, the former Director of the MDOC; Mary Berghuis, the Warden of MTF; Thomas M. Birkett, the Warden of STF (Heyns, Caruso, Berghuis, and Birkett, collectively, "Defendant Supervisors"); Physician's Assistant Bruce Masselink; and Registered Nurses Veronica Wysozan, Mark J. Kelly, and Rita M. Hunt (Masselink, Wysozan, Kelly, and Hunt, collectively, "Defendant Care Providers").

Plaintiff claims that, on November 20, 2009, another prisoner grabbed him and pushed him to his left side. When Plaintiff used his left leg to stop his momentum, he sustained a valgus-type injury to his left knee. The injury "immediately brought him to the ground, unable to get up on his own." (Compl. ¶ 15, docket #1.) Plaintiff was taken to health care for evaluation, and Defendants Masselink, Wysozan, Kelley, "and/or" Hunt "looked briefly at the injury and told Plaintiff that it was only a bruise." (Compl. ¶ 17.) Plaintiff was prescribed bed rest, but he continued to feel pain in his knee and he was not able to walk normally. He informed Defendant Care Providers several times that the bed rest was not alleviating the swelling in his knee, which had encompassed his entire leg. He also requested an x-ray analysis numerous times, but Defendant Care Providers insisted that his injury was only a bruise.

Unbeknownst to Plaintiff, he had fractured his lateral tibia, and as he waited for further treatment, it healed incorrectly. As a result, it could not support his body weight and caused him pain and suffering. Plaintiff learned about the fracture on January 29, 2010, when he received his first orthopedic evaluation and the results of a knee x-ray. At that time, he was told that he would have to undergo several operations to correct the deformity in his knee, and even then, he might

obtain only limited pain relief. He was also informed that, in time, his knee will succumb to arthritis and he will need a total knee replacement.

On April 7, 2010, Plaintiff filed a grievance complaining about Wysozan's refusal to properly treat his knee. (*See* Compl., Ex. A, docket #1-1, Page ID#15.) The grievance was reviewed and "maintained for administrative purposes" on April 28, 2010, by nurses Aloy Aquino and Judith Gracik (*Id.* at Page ID#16.) Plaintiff appealed the grievance and it was rejected as untimely at Step II by Risk Management Coordinator J. Schad. Following another appeal, the Step II response was affirmed at Step III by an official at the Bureau of Health Care Services. (*Id*. at Page ID#20.)

Plaintiff continues to endure pain in his knee and he alleges that he is being denied "meaningful medical attention." (Compl. ¶ 23.) He claims that Defendants have violated his rights under the Eighth and Fourteenth Amendments by denying him adequate medical care and depriving him of equal protection (Counts I and II of the complaint). He further claims that Defendant Supervisors are liable for the violation of Plaintiff's constitutional rights because they failed to properly train or supervise Defendant Care Providers (Count III). Finally, he claims that Defendants' deliberate failure to provide appropriate medical care, or to properly train and supervise medical staff, constitutes gross negligence (Count IV) and intentional infliction of emotional distress (Count V). As relief, Plaintiff seeks compensatory and punitive damages as well as a declaratory judgment.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. § 1915A(b)(1)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.      **Equal Protection** (Count I)

In Count I, Plaintiff asserts that Defendants deprived him of "fair and equal treatment," in violation of the Fourteenth Amendment. (Compl. ¶ 33.) "The Equal Protection Clause prevents states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat one individual differently from others similarly situated without any rational basis." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010). To the extent Plaintiff asserts an equal protection claim, however, his allegations are wholly conclusory. There are no allegations which indicate that Defendants made distinctions that burdened a fundamental right of Plaintiff, targeted a suspect class of which Plaintiff is a member,[1] or treated Plaintiff differently from others similarly situated to him. Thus, he fails to state an equal protection claim.

B.      **Substantive Due Process** (Count I)

Plaintiff also claims that Defendants deprived him of his right to substantive due process under the Fourteenth Amendment. Construing his complaint generously, his substantive due process claim appears to be based upon two grounds: (1) Defendants' failure to protect him from an attack by another inmate; and (2) Defendants' failure to provide adequate medical care. Where a prisoner complains about a prison official's failure to protect the prisoner from harm or a failure to provide adequate medical care, the claim is more properly analyzed under the Eighth Amendment than the substantive due process provision of the Fourteenth Amendment, since the former is a "more explicit textual source of constitutional protection." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The Eighth Amendment requires prison officials to protect inmates from violence at the hands of other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citing *Hudson v.*

---

[1] Prisoners are not a suspect class. *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005).

*Palmer*, 468 U.S. 517, 526-27 (1984)). It also requires prison officials provide adequate medical care to inmates, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-104 (1976). Given the explicit protections afforded by the Eighth Amendment, therefore, Plaintiff cannot "also proceed with a claim under the 'more generalized notion of substantive due process.'" *Wilson v. Collins*, 517 F.3d 421, 428 (6th Cir. 2008) (quoting *Graham*, 490 U.S. at 395); *see Wilson v. Wilkins*, 362 F. App'x 440, 443 (6th Cir. 2010) (affirming the district court's decision to analyze a search-and-seizure claim under the Fourth Amendment rather than the Fourteenth); *see also United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("*Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."). Accordingly, because Plaintiff fails to state a substantive due process claim, Count I will be dismissed.

### C. Eighth Amendment (Count II)

In order for Plaintiff to prevail on a claim that Defendants violated his Eighth Amendment rights by failing to protect him from another inmate, he must show that Defendants were deliberately indifferent to Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). Assuming that all of the allegations in the complaint are true, however, Plaintiff cannot make such a showing. There are no allegations indicating that Plaintiff was at risk of being attacked, much less that Defendants were aware of this risk and deliberately ignored it. Accordingly, Plaintiff fails to state an Eighth Amendment claim with respect to the attack by another prisoner.

To prevail on a claim that Defendants failed to provide adequate medical care, he must show that he faced a serious risk to his health or safety and that a defendant official acted with "deliberate indifference" to his health or safety. *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834). In other words, a claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the medical need at issue must be sufficiently serious. *Id*. To satisfy the subjective component, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. Upon review, the Court concludes that Plaintiff's allegations are sufficient to warrant service of the Eighth Amendment claim in Count II against Defendant Care Providers. Plaintiff's claim against Defendant Supervisors fails under the subjective prong of Eighth Amendment analysis, however, because there are no allegations indicating that the latter Defendants were even aware of Plaintiff's medical condition, much less that they were deliberately indifferent to it. Accordingly, the Court will dismiss Count II solely as to Defendant Supervisors.

### D. **Supervisor Liability** (Count III)

In Count III, Plaintiff contends that Defendant Supervisors are indirectly or vicariously liable for any constitutional violations by Defendant Care Providers under a theory of respondeat superior. It is firmly established, however, that government officials may not be held liable for the unconstitutional conduct of others under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not

enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Similarly, a failure to train subordinates does not, by itself, subject an official to § 1983 liability. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *accord Barnett v. Luttrell*, 414 F. App'x 784, 789 (6th Cir. 2011). At a minimum, Plaintiff must allege that Defendants "'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Barnett*, 414 F. App'x at 789 (quoting *Shehee*, 199 F.3d at 300). The allegations against Defendant Supervisors do not make this showing.

Plaintiff also alleges that Defendant Supervisors are liable due to "policies, practices, and customs" in existence at the prison facilities, as well as the "tacit understanding of the conduct of [Defendant Supervisors'] staff." (Compl. ¶ 32.) Plaintiff, however, does not identify any such policies, practices, or customs, or allege any facts supporting their existence. A mere recitation that Defendant Care Providers acted according to policies, practices and customs is not sufficient to state a plausible claim. *Cf. Jarvis v. Marcum*, 77 F. App'x 308, 310 (6th Cir. 2003) (holding that, to plead an official capacity claim against a municipal employee, the complaint must identify the policy or custom attributable to the municipality) (citing *Garner v. Memphis Police Dep't*, 8 F3d 358, 364 (6th Cir. 1993). In short, Plaintiff's failure to allege that Defendant Supervisors engaged in any active unconstitutional conduct is fatal to his Eighth Amendment claim against them. Accordingly, Count III will be dismissed for failure to state a claim.

### E. Gross Negligence (Count IV)

In Count IV, Plaintiff asserts that Defendants' respective actions constituted gross negligence under Michigan law. Defendant Supervisors are immune from this claim under Michigan law. Defendants Caruso and Heyns are immune from suit under MICH. COMP. LAWS § 691.1407(5), which provides that the "highest appointive executive official of all levels of government" is immune

from tort liability for "injuries to persons . . . if he or she is acting within the scope of his or her judicial, legislative, or executive authority." There is no question that Defendants Caruso and Heyns, the former and current directors of the MDOC, are sued in their respective capacities as the "highest appointive executive official" in charge of the MDOC. *Cf. Harrison v. Dir. of Dep't of Corr.*, 487 N.W.2d 799, 803 (Mich. Ct. App. 1992) (finding that former directors of the MDOC were entitled to absolute immunity). In addition, there is no indication that, by failing to act, Defendants Caruso and Heyns acted outside the scope of their authority. Thus, they are entitled to immunity for the gross-negligence claim.

Defendants Berghuis and Birkett, wardens of MDOC prison facilities, are entitled to immunity under MICH. COMP. LAWS § 691.1407(2), which provides, in relevant part:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency . . . is immune from tort liability for an injury to a person . . . caused by the officer [or] employee . . . while in the course of employment . . . if all of the following are met:
>
> (a) The officer . . . is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

As with Defendants Caruso and Heyns, there is no indication that Defendants Berghuis or Birkett acted outside the scope of their authority. Moreover, the operation and management of state prisons, and the care of prisoners therein, is clearly a governmental function. *See Spruytte v. Dep't of Corr.*, 266 N.W.2d 482, 483 (Mich. Ct. App. 1978) ("The operation and maintenance of a jail is a

governmental function."). Finally, the third requirement is satisfied because the facts alleged in the complaint are not indicative of gross negligence on the part of Defendants Berghuis or Birkett. Gross negligence is defined by the statute as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MICH. COMP. LAWS § 691.1407(7)(a); *see also Jennings v. Southwood*, 521 N.W.2d 230, 235 (Mich. 1994) (recognizing the gross negligence standard delineated by statute). There are no allegations indicating that Defendants Berghuis and Birkett were aware of Plaintiff's condition, or of any risk of injury posed by their alleged failure to train or supervise staff at their respective prison facilities. Consequently, Plaintiff has not alleged conduct by Defendants Berghuis and Birkett that rises to the level of gross negligence, as that term is defined in the statute. *See Garretson v. City of Madison Heights*, 407 F.3d 789, 801 (6th Cir. 2005) (finding that an officer who was unaware of the plaintiff's condition was entitled to governmental immunity for a gross-negligence claim). Thus, all of the requirements for statutory immunity are met with respect to Plaintiff's gross negligence claim against Defendants Berghuis and Birkett.

For the foregoing reasons, therefore, Defendant Supervisors will be dismissed as Defendants to Count IV because they are immune from liability.

### F.  Intentional Infliction of Emotional Distress (Count V)

In Count V, Plaintiff asserts that Defendants committed the tort of intentional infliction of emotional distress (IIED) by: "subjecting [Plaintiff] to unprovoked and unjustified mistreatment and humiliation"; treating him "in an extremely and outrageously abusive manner"; intentionally depriving him of medical care and treatment; and intentionally depriving him "of his liberties without excuse or justification." (Compl. ¶ 57.)

In order to establish a claim for IIED, a plaintiff must show: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v. Ford*, 604 N.W.2d 713, 716 (Mich. Ct. App. 1999); *see also Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905 (Mich. 1985). The conduct complained of must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"'" *Roberts*, 374 N.W.2d at 908-09 (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d). "The second element of the tort of intentional or reckless infliction of emotional distress may be proved two ways. A plaintiff can show that a defendant specifically intended to cause a plaintiff emotional distress or that a defendant's conduct was so reckless that 'any reasonable person would know emotional distress would result.'" *Lewis v. LeGrow*, 670 N.W.2d 675, 689 (Mich. Ct. App. 2003) (quoting *Haverbush v. Powelson*, 551 N.W.2d 206, 210 (Mich. Ct. App. 1996)).

Because there are no allegations indicating that Defendant Supervisors were aware of Plaintiff's condition, or of any risk of harm to his health, it cannot be said that they engaged in intentional or reckless conduct with respect to his health or safety. Moreover, there is no indication that any failures by Defendant Supervisors were so outrageous and extreme as to support an IIED claim. Finally, Plaintiff fails to identify any causal connection between the denial of medical care by Defendant Care Providers and the lack of training or supervision by Defendant Supervisors. For all of the foregoing reasons, therefore, Plaintiff fails to state an IIED claim against Defendant Supervisors, and they will be dismissed as defendants to Count V.

**Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Counts I (substantive due process and equal protection) and III (supervisory liability under § 1983) will be dismissed as to all Defendants. Moreover, Count IV (gross negligence) will be dismissed solely as to Defendant Supervisors (Caruso, Heyns, Berghuis, and Birkett) because they are immune from liability. Finally, Counts II (Eighth Amendment) and V (IIED) will be dismissed solely as to Defendant Supervisors, for failure to state a claim upon which relief may be granted. Dismissal of the foregoing claims means that Defendant Supervisors will be dismissed from this action. The Court will order service of the claims in Counts II, IV, and V of the complaint against Defendant Care Providers (Masselink, Wysozan, Kelly, and Hunt).

An Order consistent with this Opinion will be entered.


Dated:   February 27, 2012              /s/ Robert J. Jonker
                                        ROBERT J. JONKER
                                        UNITED STATES DISTRICT JUDGE