UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLEVELAND ROGERS,

        Plaintiff,

v.

PATRICIA L. CARUSO, *et al.*,

        Defendants.
        _____/

Case No. 1:11-cv-1121

Hon. Robert J. Jonker

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner, through counsel, pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendant Wysozan and Kelly's "Motion for summary judgment and motion for dismissal" (docket no. 14).[1]

**I.    Plaintiff's claims**

The Court previously summarized plaintiff's claims as follows:

> Plaintiff Cleveland Rogers is a state prisoner in the custody of the Michigan Department of Corrections (MDOC). Plaintiff is presently incarcerated at the Central Michigan Correctional Facility (STF), though the events giving rise to his complaint occurred while he was incarcerated at the West Shoreline Correctional Facility (MTF) in Muskegon, Michigan. Defendants are employees of the MDOC: Daniel H. Heyns, the Director of the MDOC; Patricia L. Caruso, the former Director of the MDOC; Mary Berghuis, the Warden of MTF; Thomas M. Birkett, the Warden of STF (Heyns, Caruso, Berghuis, and Birkett, collectively, "Defendant Supervisors"); Physician's Assistant Bruce Masselink; and Registered Nurses Veronica Wysozan, Mark J. Kelly, and Rita M. Hunt (Masselink, Wysozan, Kelly, and Hunt, collectively, "Defendant Care Providers").

---

[1] The court notes that plaintiff's response to defendants' motion for summary judgment incorporated a motion to amend the complaint. *See* Response (docket no. 17). This motion is addressed in a separate order.

> Plaintiff claims that, on November 20, 2009, another prisoner grabbed him and pushed him to his left side. When Plaintiff used his left leg to stop his momentum, he sustained a valgus-type injury to his left knee. The injury "immediately brought him to the ground, unable to get up on his own." (Compl. ¶ 15, docket #1.) Plaintiff was taken to health care for evaluation, and Defendants Masselink, Wysozan, Kelley, "and/or" Hunt "looked briefly at the injury and told Plaintiff that it was only a bruise." (Compl. ¶ 17.) Plaintiff was prescribed bed rest, but he continued to feel pain in his knee and he was not able to walk normally. He informed Defendant Care Providers several times that the bed rest was not alleviating the swelling in his knee, which had encompassed his entire leg. He also requested an x-ray analysis numerous times, but Defendant Care Providers insisted that his injury was only a bruise.
>
> Unbeknownst to Plaintiff, he had fractured his lateral tibia, and as he waited for further treatment, it healed incorrectly. As a result, it could not support his body weight and caused him pain and suffering. Plaintiff learned about the fracture on January 29, 2010, when he received his first orthopedic evaluation and the results of a knee x-ray. At that time, he was told that he would have to undergo several operations to correct the deformity in his knee, and even then, he might obtain only limited pain relief. He was also informed that, in time, his knee will succumb to arthritis and he will need a total knee replacement.
>
> On April 7, 2010, Plaintiff filed a grievance complaining about Wysozan's refusal to properly treat his knee. (See Compl., Ex. A, docket #1-1, Page ID#15.) The grievance was reviewed and "maintained for administrative purposes" on April 28, 2010, by nurses Aloy Aquino and Judith Gracik (*Id.* at Page ID#16.) Plaintiff appealed the grievance and it was rejected as untimely at Step II by Risk Management Coordinator J. Schad. Following another appeal, the Step II response was affirmed at Step III by an official at the Bureau of Health Care Services. (*Id.* at Page ID#20.)
>
> Plaintiff continues to endure pain in his knee and he alleges that he is being denied "meaningful medical attention." (Compl. ¶ 23.) He claims that Defendants have violated his rights under the Eighth and Fourteenth Amendments by denying him adequate medical care and depriving him of equal protection (Counts I and II of the complaint). He further claims that Defendant Supervisors are liable for the violation of Plaintiff's constitutional rights because they failed to properly train or supervise Defendant Care Providers (Count III). Finally, he claims that Defendants' deliberate failure to provide appropriate medical care, or to properly train and supervise medical staff, constitutes gross negligence (Count IV) and intentional infliction of emotional distress (Count V). As relief, Plaintiff seeks compensatory and punitive damages as well as a declaratory judgment.

Opinion at pp. 1-3 (docket no. 6).

After screening the complaint, the court dismissed Count I (equal protection and substantive due process) and Count III (supervisory liability under § 1983) as to all defendants. *Id.* at p. 12. The court dismissed Count II (Eighth Amendment), Count IV (gross negligence) and Count V (intentional infliction of emotional distress) as to the defendant Supervisors Caruso, Heyns, Berghuis, and Birkett. *Id.* The court, however, ordered service of the claims in Counts II, IV, and V against the defendant care providers, Nurses Masselink, Wysozan, Kelly, and Hunt. *Id.*; Order Regarding Partial Dismissal and Partial Service (docket no. 7).

## II. Defendants' motion for summary judgment

### A. Legal standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Defendants Nurse Kelly and Wysozan, two of the defendant care providers, seek summary judgment on the ground that plaintiff failed to exhaust his administrative remedies. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B. Exhaustion

#### 1. Exhaustion requirement

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grieveable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

#### 2. Plaintiff's grievance

It is undisputed that grievance MTF-2010-04-027-12E ("217") is the operative grievance in this action. *See* Grievance no. 217 (docket no. 1-1). Plaintiff identified grievance no. 217 as relevant to his action and attached a copy of the grievance to his complaint and defendants rely on this grievance as the basis for their motion for summary judgment.

### a. Nurse Kelly

Nurse Kelly seeks summary judgment for lack of exhaustion because he is not named in grievance no. 217. Plaintiff identified only one person in the grievance, Nurse Wysozan, identifying her four different times. Grievance no. 217 (docket no. 1-1 at p.1). Plaintiff complained that Nurse Wysozan ignored the swelling in his leg, ignored his extreme pain, allowed a fracture to heal improperly, and engaged in conduct "intended to save her employing company the cost of a[n] inmate going to a hospital emergency room for a proper diagnosis and treatment of a broken bone." *Id.* (docket no. 1-1 at p. 1).

Although plaintiff did not name Nurse Kelly in the grievance, he now contends that he exhausted a grievance against Kelly because the grievance included the phrase "L.P.N. Wysozan, employer PRISON HEALTH SERVICE" and referred to the "care provided" to plaintiff. According to plaintiff, this language is sufficient to imply that actions committed by "the other providers working on behalf of Prison Health Services are at issue." *Id.*; Plaintiff's Response at pp. 12-13 (docket no. 17). Plaintiff's contention is without merit. Policy Directive 03.02.130 ¶ R requires that plaintiff named Nurse Kelly in the grievance. Plaintiff failed to do so. Based on this record, plaintiff did not properly exhaust a grievance against Nurse Kelly. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91. Accordingly, Nurse Kelly's motion for summary judgment should be granted.[2]

---

[2] Plaintiff seeks to circumvent requirement that he name the party grieved by citing *Grear v. Gelabert*, No. 1:07-cv-2003, 2008 WL 474098 (W.D. Mich. Feb. 15, 2008) for the proposition that a grievance that was addressed on its merits and named only "health care staff" provided sufficient notice for the purpose of satisfying the PLRA's exhaustion requirement. Plaintiff's Response at p. 12. The court disagrees with plaintiff's suggestion that *Grear* recognized a general rule excusing prisoners from naming the person grieved. Furthermore, the decision in *Grear* is not binding on this court and is contrary to more recent developments in the caselaw. *See, e.g., Sullivan v. Kasajaru*, 316 Fed. Appx. 469, 470 (6th Cir.2009) (affirming dismissal for lack of exhaustion where prisoner failed to follow requirements of Policy Directive

### b. Nurse Wysozan

Grievance no. 217 raised a number of claims against Nurse Wysozan. The grievance identifies an incident date of November 20, 2009, but was not completed by plaintiff until April 5, 2010 (and received by the MDOC on April 7, 2010). *See* Grievance no. 217 (docket no. 1-1 at p. 1). Plaintiff stated that he attempted to resolve the grievance from "Dec 2009 - Mar 2010". *Id.* Plaintiff stated that he wrote several medical request kites for further treatment but that he received "no service to correct the injury caused by the initial denial of medical care on 11/20/2009." *Id.*

The MDOC did not reject the grievance as untimely, but provided the following response:

> The grievant was injured 11-2009. The grievant was evaluated and provided treatment. An x-ray was done with subsequent follow up by a physician. The grievant was last evaluated by a medical provider on 4-27-10. The grievance will be maintained for administrative purposes.

Step I response (docket no. 1-1 at p. 2).

When plaintiff appealed to Step II, the reviewer rejected the grievance as untimely filed at Step I:

> The step I grievance/response and step II appeal have been reviewed. This grievance should have been rejected at step I as untimely and is rejected as such at step II. The grievant is referred to the above listed PD and encouraged to file grievances responsibly in the future.

Step II response (docket no. 1-1 at p. 4). The MDOC denied the grievance at Step III, at which time it also affirmed the Step II response (i.e., that the grievance should have been rejected as untimely). Step III response (docket no. 1-1 at p. 6).

---

03.02.130, which explicitly required him to name each person against whom he grieved, citing *Jones* and *Woodford*).

In their present motion, defendants contend that plaintiff did not properly exhaust this grievance because it was ultimately denied as untimely. While the Step I response appeared to address the merits of plaintiff's claims, the Step II and III responses pointed out that the grievance was untimely and "should have been rejected at step I."

In his response to the motion, plaintiff contends that the grievance was not untimely because he suffered from an on-going condition that commenced on November 20, 2009 but continued through the time he filed the grievance on April 2010. In essence, plaintiff contends that the issue of timeliness should be determined from the last date he was denied care rather than the date of his original injury. The policy directive, however, measures timeliness from the time the prisoner is "aware of a grievable issue":

> Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration. If the issue is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff.

Policy Directive 03.02.130 ¶ P.

Here, plaintiff's grievance involved an ambiguous timeline and sought relief against Nurse Wysozan, who made the initial diagnosis of his condition in November 2009. To the extent Nurse Wysozan's incorrect diagnosis was grievable, plaintiff became aware of that mistake by January 29, 2010, when he received his first orthopedic evaluation of the results of his knee x-ray, and was told he needed several operations. While plaintiff tried to resolve the issue in December 2009, he has provided no explanation for when he became aware of a grievable issue, and as to this defendant it could not have been until after January 29, 2010. While the MDOC initially responded

8

to the substance of plaintiff's claim regarding lack of treatment, it ultimately determined that the original grievance should have been rejected as untimely. This is not a case where the MDOC clearly addressed the merits of the grievance through Step III of the appeal process, but later claimed in related litigation that the grievance was untimely or procedurally defective.

One reason for requiring the exhaustion of grievance procedures under the PLRA is to "allow[] prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. In this case, the MDOC followed its grievance procedure and determined that plaintiff's grievance should have been rejected as untimely. Under the circumstances in this case, the court will not overrule the MDOC's determination.

Based on this record, plaintiff did not properly exhaust a grievance against Nurse Wysozan, *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 90-91, and Nurse Wysozan's motion for summary judgment should be granted.

### III. Motion to dismiss gross negligence claims

Nurses Kelly and Wysozan seek dismissal of plaintiff's claim of gross negligence. The Sixth Circuit has found that there is no separate cause of action for gross negligence under Michigan law: "[a]lthough establishing that a governmental official's conduct amounted to 'gross negligence' is a prerequisite to avoiding that official's statutory governmental immunity, it is not an independent cause of action." *Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir.2011). Accordingly, plaintiff's claim of gross negligence should be dismissed.

9

## IV. Eleventh Amendment Immunity

Plaintiff has sued Nurses Kelley and Wysozan in both their individual and official capacities. The nurses seek dismissal of plaintiff's claims to the extent that plaintiff seeks monetary damages against the nurses in their official capacities. The court agrees. Plaintiff's § 1983 claims for monetary damages against the defendants in their official capacities are barred by Eleventh Amendment immunity. *See Will v. Department of State Police*, 491 U.S. 58, 64-71 (1989); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities"). Defendants are entitled to summary judgment with respect to these official capacity claims.

## V. Remaining state law claims

If the court adopts the undersigned's recommendation to grant summary judgment to Nurses Kelley and Wysozan, then the state law claims asserted against them should be dismissed without prejudice. Title 28 U.S.C. § 1367 provides that "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a). The court exercised its supplemental jurisdiction over plaintiff's state law claims, presumably because those claims were intimately related to the alleged § 1983 violation. The dismissal of plaintiff's federal claims against defendants, however, requires the court to re-examine the issue of supplemental jurisdiction for state law claims. A district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." *Id.* at § 1367(c)(3). Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella*

## IV. Eleventh Amendment Immunity

Plaintiff has sued Nurses Kelley and Wysozan in both their individual and official capacities. The nurses seek dismissal of plaintiff's claims to the extent that plaintiff seeks monetary damages against the nurses in their official capacities. The court agrees. Plaintiff's § 1983 claims for monetary damages against the defendants in their official capacities are barred by Eleventh Amendment immunity. *See Will v. Department of State Police*, 491 U.S. 58, 64-71 (1989); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities"). Defendants are entitled to summary judgment with respect to these official capacity claims.

## V. Remaining state law claims

If the court adopts the undersigned's recommendation to grant summary judgment to Nurses Kelley and Wysozan, then the state law claims asserted against them should be dismissed without prejudice. Title 28 U.S.C. § 1367 provides that "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a). The court exercised its supplemental jurisdiction over plaintiff's state law claims, presumably because those claims were intimately related to the alleged § 1983 violation. The dismissal of plaintiff's federal claims against defendants, however, requires the court to re-examine the issue of supplemental jurisdiction for state law claims. A district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." *Id.* at § 1367(c)(3). Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella*

*v. Commerce Exchange Bank*, 137 F.3d 885, 892-93 (6th Cir.1998). As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254–1255 (6th Cir.1996). Accordingly, if the court grants Nurses Kelley and Wsyzan's summary judgment for lack of exhaustion, then it should also dismiss plaintiff's supplemental state law claims asserted against them.

**VI.    Recommendation**

For the reasons set forth above, I respectfully recommend that defendant Wysozan and Kelly's motion for summary judgment (docket no. 14) be **GRANTED**.

I further recommend that plaintiff's state law claim for gross negligence against these defendants (Count IV) be **DISMISSED**.

I further recommend that plaintiff's state claim for intentional infliction of emotional distress against these defendants (Count V) be **DISMISSED**, without prejudice.


Dated:  February 11, 2013                          /s/ Hugh W. Brenneman, Jr.
                                                   HUGH W. BRENNEMAN, JR.
                                                   United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).