UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLEVELAND ROGERS,

    Plaintiff,

v.

PATRICIA CARUSO, *et al.*,

    Defendants.

_____/

CASE NO. 1:11-CV-1121

HON. ROBERT J. JONKER

## ORDER APPROVING AND ADOPTING REPORT AND RECOMMENDATION

The Court has reviewed the Magistrate Judge's Report and Recommendation (docket # 19) and Plaintiff's Objections to Report and Recommendation (docket # 20). Under the Federal Rules of Civil Procedure, where, as here, a party has objected to portions of a Report and Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's recommendation unless, on de novo reconsideration, he or she finds it justified." 12 WRIGHT, MILLER, & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 381 (2d ed. 1997). Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

FED R. CIV. P. 72(b)(3). De novo review in these circumstances requires at least a review of the evidence before the Magistrate Judge. *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981).

**I. ROGERS' FEDERAL-LAW CLAIMS AGAINST MARK KELLY (COUNTS I AND II)**

Michigan Department of Corrections' ("MDOC") Policy Directive 03.02.130 ¶ R provides that a prisoner's grievance is effective only against individuals actually named in the grievance. Rogers did not expressly name Defendant Nurse Mark Kelly in the grievance here at issue. The closest he came to naming Kelly in his Step I grievance was in mentioning "L.P.N Wysozan employer PRISON HEALTH SERVICE" and referencing the "care provided" him after he injured his leg. Prison Health Service did employ Kelly, and Kelly did provide some of the care for Rogers. But those general recitations are inadequate to notify potential defendants of grievances against them, specifically. They do not, therefore, satisfy the Policy Directive's requirement that a prisoner name the individuals against whom he or she is filing a grievance. Because Rogers did not even name Kelly in his Step I grievance, he cannot have properly exhausted the grievance process with respect to his claims against Kelly. Accordingly, Kelly is entitled to summary judgment on Count I (alleging Fourteenth Amendment violations) and Count II (alleging Eighth Amendment violations) of Rogers' Complaint (doc. # 1, at 7-9).

**II. ROGERS' FEDERAL-LAW CLAIMS AGAINST VERONICA WYSOZAN (COUNTS I AND II)**

There is no question, by contrast, that Rogers named Wysozan in his Step I grievance. Nevertheless, Wysozan argues--and Magistrate Judge Brenneman found--that Rogers failed to exhaust his grievance against her because he did not file it on time. Rogers acknowledges that he did not file his Step I grievance in accordance with the schedule set out in MDOC's Policy Directives, but argues that any objections to the timing of his Step I grievance were waived when the Step I grievance reviewer addressed the merits of his grievance. At both Steps II and III of

the grievance process, the reviewers sustained denial of Rogers' grievance on the ground that Rogers was untimely in his original filing.

Michigan prisoners must follow MDOC rules about the timing and content of grievances. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). Prisoners who do not follow the rules fail to use--and thus fail to exhaust--available administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "When a prisoner fails to exhaust administrative remedies before filing a civil rights complaint in federal court, or only partially exhausts administrative remedies, dismissal of the complaint is appropriate." *Smith v. Fed. Bureau of Prisons*, 300 F.3d 721 (6th Cir. 2002) (citing 42 U.S.C. § 1997e(a)).

There are several reasons why courts generally insist on strict compliance with the procedural requirements for filing grievances. Among other things, adhering to established procedures gives prison officials "a fair opportunity" to address grievances on the merits and facilitates the creation of thorough and accurate administrative records for those disputes that wind up in court. *Woodford*, 548 U.S. at 94-96. In addition, enforcement of procedural requirements "prevents inmates from undermining [the administrative review process] by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation in the process." *Reed-Bey*, 603 F.3d at 325.

An exception to the general rule favoring enforcement of procedural requirements arises, however, when prison officials resolve otherwise-defaulted claims on the merits, rather than actually enforcing and relying upon the procedural requirements themselves. When that happens, a court will not save the prison from itself by crediting the same procedural defenses the prison eschewed in its own internal proceedings. Instead, the court will treat the procedural defense as

waived and will address the merits of the grievance. See *id.* at 326 ("We instead conclude that Reed-Bey properly exhausted his claim because he invoked one complete round of the Department's grievance procedures and received merits-based responses at each step.").

Rogers' claims against Wysozan raises the question of what to do when the initial reviewer at Step I addresses the merits of a grievance without relying on an otherwise applicable procedural defense, but then both later reviewers sustain the initial denial on procedural grounds, rather than on the merits. Where, as here, the final decsision-maker in the grievance process properly applied and relied upon a procedural defense to reject a prisoner's grievance, the Court cannot find that MDOC waived its procedural defense. Crediting the final results of the grievance review process in this case avoids unnecessary interference with prison administration, incentivizes good-faith efforts at exhaustion, and conserves scarce judicial resources--all key aims of the Prison Litigation Reform Act. See *Woodford*, 548 U.S. at 89-93; *Reed-Bey*, 603 F.3d at 326. Just as importantly, it allows the grievance process to work as MDOC intends. The point of having three tiers of grievance review is to ensure that MDOC's ultimate decision with respect to a grievance is carefully considered and refined before any federal court litigation ensues. If, at every stage of the grievance review process, the reviewers choose not to rely on procedural defenses, it is only fair to treat those defenses as waived. But when the final outcome of the grievance process invokes and relies upon a procedural defense, the only proper scope of federal review must be of the sufficiency of that procedural defense.

Sixth Circuit precedent supports that conclusion. In *Reed-Bey*, for example, the Court concluded that a prisoner "properly exhausted his claim because he invoked *one complete round* of [MDOC's] procedures and received merits-based responses *at each step*." 603 F.3d at 326

(emphasis added); see also *Johnson v. Beardslee*, No. 1:06-cv-374, 2007 WL 2302378, at *3 (W.D. Mich. Aug. 8, 2007) (finding exhaustion of a grievance not timely filed because, in contrast to Rogers' case, "the MDOC neither rejected nor denied the grievance as untimely"). Indeed, Rogers' attorneys have not pointed the Court to a single case where any court in this Circuit concluded that a Step I grievance reviewer's failure to rely on a procedural defect in a grievance affected a permanent waiver of that defect when later reviewers invoked and relied upon the procedural defect.

In sum, despite the Step I grievance reviewer's decision to address the merits of Rogers' grievance, the fact that the Step II and Step III grievance reviewers both denied Rogers' grievance as being untimely filed establishes that MDOC did not waive the exhaustion issue with respect to Rogers' claims against Wysozan. Consequently, the Court agrees with Magistrate Judge Brenneman that Rogers failed to properly exhaust his federal-law claims against Wysozan and that Wysozan is therefore entitled to summary judgment as to Counts I and II of Rogers' Complaint (doc. # 1, at 7-9).

## III. ROGERS' GROSS NEGLIGENCE CLAIM AGAINST KELLY AND WYSOZAN (COUNT IV)

As Magistrate Judge noted in his Report and Recommendation (doc. # 19, at 9), the Sixth Circuit has held that Michigan law does not create an independent cause of action for gross negligence. *Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011). Therefore, Rogers' gross negligence claim (Count IV) should be dismissed with respect to Kelly and Wysozan.

## IV. ROGERS' INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM AGAINST KELLY AND WYSOZAN (COUNT V)

Rogers' remaining claim (Count V) against Kelly and Wysozan is for intentional infliction of emotional distress ("IIED"). The only basis for the federal subject matter jurisdiction over that claim is supplemental jurisdiction under 28 U.S.C. § 1367(a). Having dismissed all of Rogers' federal-law claims against Kelly and Wysozan, the Court may dismiss Rogers' IIED claim against them under 28 U.S.C. § 1367(c)(3). The Court agrees with Magistrate Judge Brenneman that dismissal of Rogers' IIED claim against Kelly and Wysozan is proper in this case. (See Report & Recommendation, doc. # 19, at 11.)

**IT IS THEREFORE ORDERED** that the Report and Recommendation of the Magistrate Judge (docket # 73) is approved and adopted as the opinion of the Court.

**IT IS FURTHER ORDERED** that Defendants Kelly and Wysozan's Motion for Summary Judgment and Motion for Dismissal (docket # 14) is **GRANTED**.

**IT IS FURTHER ORDERED** that Counts I, II, and IV of Plaintiff Rogers' Complaint (doc. # 1) against Defendants Kelly and Wysozan are **DISMISSED** with prejudice, and that Count V of Plaintiff Rogers' Complaint (doc. # 1) against Kelly and Wysozan is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that Defendants Kelly and Wysozan are hereby **TERMINATED** from this case.

Dated: March 29, 2013

ROBERT J. JONKER
UNITED STATES DISTRICT JUDGE